UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH CORWIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 4579 |
| | ) |
| CONNECTICUT VALLEY ARMS, INC., | ) Judge Rebecca R. Pallmeyer |
| BLACKPOWDER PRODUCTS, INC., | ) |
| HODGON POWER COMPANY, INC., | ) |
| ACCURA BULLETS, LLC d/b/a | ) |
| POWERBELT BULLETS, DIKAR, S. COOP. | ) |
| LTDA., REMINGTON ARMS COMPANY, LLC, | ) |
| and JOHN DOE DEFENDANTS #1-5, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith Corwin suffered permanent injuries after a rifle he attempted to fire exploded in his left hand. In this lawsuit brought under the court's diversity jurisdiction, Corwin asserts claims of negligence, strict liability, breaches of express and implied warranties, as well as a claim for punitive damages, against several parties that he alleges manufactured different parts of the rifle and bullet or otherwise caused his injuries.[1] The bullet manufacturer, Accura,

---

[1] Plaintiff Corwin is an Illinois resident. (Third Am. Compl. [69], ¶ 1.) Accura Bullets, LLC ("Accura") is a limited liability company organized under the laws of the State of Idaho with its principal place of business in Georgia. (*Id.* ¶ 6.) Accura's members (Harold Crowson and Michael McMichael) are domiciled in Idaho. (*Id.*) Accura is thus a citizen of Idaho and Georgia for the purposes of determining diversity.

Other named Defendants (including those previously dismissed from this case) are diverse in citizenship as well: Accura's parent, Blackpowder Products, Inc. ("BPI"), is incorporated in Georgia and has its principal place of business in Georgia. (*Id.* ¶¶ 2–3.) BPI is the corporate successor in interest to Connecticut Valley Arms, Inc., and the two have the same citizenship, Georgia, for the purposes of this action. (Third Am. Compl. ¶ 2.)

Defendant Dikar, S. Coop. Ltda. ("Dikar"), allegedly the manufacturer of the rifle at issue here, is a Spanish corporation with its principal place of business in Spain. (*Id.* ¶¶ 4, 24–25.)

Hodgdon Powder Company, Inc. is incorporated in Kansas and has its principal place of business there. (*Id.* ¶ 5.) Remington Arms Company, LLC ("Remington"), is organized under the laws of Delaware. (*Id.* ¶ 7.) Remington's sole member is FGI Operating Company, LLC, which is organized under the laws of Delaware; FGI Operating Company, LLC's sole member is FGI Holding Company, LLC, which is also organized under the laws of Delaware. FGI Holding

(continued . . .)

moves to dismiss Plaintiff's claims against it under Rule 12(b)(6), arguing that Plaintiff has failed to allege particularized facts in his complaint sufficient to satisfy federal pleading requirements as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court agrees and dismisses Plaintiff's claims against Accura without prejudice.

## **BACKGROUND**

On June 24, 2011, Plaintiff Keith Corwin prepared to shoot a muzzleloader gun on his property in Morris, Illinois.[2] (Third Am. Compl. ¶ 26.) Plaintiff does not say whether he was hunting game, engaged in target practice, or simply preparing to fire the weapon into the air.[3] Plaintiff alleges that he loaded the muzzleloader properly using Accura-manufactured 0.50 caliber bullets, gunpowder, and a primer. (*Id.* ¶ 27.) When Plaintiff pulled the trigger to fire a shot, the gun's barrel exploded, causing severe damage to his left hand, including the loss of his thumb. (*Id.* ¶¶ 28, 30–31.) Pieces of the exploded muzzleloader's stock and barrel were found in Plaintiff's yard. (*Id.* ¶ 29.)

---

Company, LLC's sole member is Remington Outdoor Company, Inc., which is organized under the laws of Delaware and has its principal place of business in North Carolina. Remington is thus a citizen of Delaware and North Carolina for the purposes of determining diversity.

Connecticut Valley Arms, Inc., Hodgdon Powder Company, and Remington Arms Company, LLC, have been dismissed as Defendants from the case. (*See* Docs. [64], [85], [86].)

The remaining Defendants are unknown at this time and are referred to in the complaint as "John Does #1–5." (Third Am. Compl. ¶¶ 8–11.) The court treats unnamed Defendants as "nominal parties, whose presence does not affect diversity jurisdiction." *Moore v. General Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996). Plaintiff alleges he suffered more than $75,000 in damages resulting from the incident.

Accordingly, this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(3). Illinois choice-of-law rules apply and suggest Illinois law governs the dispute because that is "where the injury was inflicted." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010). The parties do not dispute that Illinois law applies.

[2] The muzzleloader was a BPI/Dikar Magbolt 150 0.50 Caliber In-Line Muzzleloader rifle. (Compl. ¶ 24.)

[3] It appears that Plaintiff fired the rifle from his "hip, without shouldering it when it exploded." (*See* Mot. to Supp. Pl.'s Resp. to Def.'s Mot. to Dismiss [92], with Ex. 1, Pl.'s Expert Report [92-1], ¶ 5.2.) Whether Plaintiff's method of firing the rifle contributed to his injuries is unclear at this point.

Plaintiff alleges in his complaint that the muzzleloader and bullet were defective and that such defects caused the explosion. (*See* Third Am. Compl. ¶¶ 43, 45). Specifically, Plaintiff alleges that the muzzleloader's barrel was "inadequate to withstand the normal service load" because it was "constructed of weak steel." (*Id.* ¶ 43–44.) Plaintiff further asserts that Accura's bullets were "defective, causing increased barrel pressures leading to the barrel explosion." (*Id.* ¶ 45.)

Plaintiff sued several Defendants allegedly responsible for manufacturing the bullet and rifle. Following investigation, Plaintiff voluntarily dismissed his claims against many of the original named parties. Accura, Accura's parent company BPI, and Dikar—the alleged manufacturer of the subject rifle—are the only remaining non-nominal parties to the case. *See supra*, at 1 n.1. He asserts five causes of action against each party: negligence, strict product liability, breach of implied warranty, breach of express warranty, and punitive damages (which as discussed below, is a request for a certain form of relief rather than an independent claim). Plaintiff asserts that he has suffered lost wages, pain, suffering, mental anguish, loss of enjoyment of life, and medical and hospital expenses as a result of the accident. (Third Am. Compl. ¶¶ 31–32.) He expects to incur additional treatment costs in the future for physical and emotional injuries. (*Id.*)

## **PROCEDURAL HISTORY**

Accura's motion challenges Plaintiff's third amended complaint. (Def.'s Mot. to Dismiss Pl.'s Third Am. Compl. [75].) This is not the first such motion: Accura moved to dismiss Plaintiff's claims of breaches of implied and express warranties and his punitive damages request in Plaintiff's first and second amended complaints as well. (*See* Docs. [34] and [45]; Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Second Am. Compl. [46].) Those earlier motions have been withdrawn (*See* Status Hearing, May 1, 2014 [86]), but the parties agree that Accura's arguments in its brief accompanying its second motion to dismiss, as well as Plaintiff's responses, are still before the court. (*See id.*).

3

**DISCUSSION**

Rule 12(b)(6) provides for dismissal of a complaint on motion for "failure to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in favor of the non-moving party. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 761–62 (7th Cir. 2012). The court does not ask whether a plaintiff will ultimately prevail; rather, it asks whether plaintiff is entitled to offer evidence to support its allegations. *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Even post-*Twombly* and *Iqbal*, though, the federal pleading standard requires only that a plaintiff provide "enough detail [in a complaint] to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

Accura argues that Plaintiff has not made fact-based allegations sufficient to support his claims and simply couches legal elements as factual assertions. These assertions, Accura contends, are insufficient under *Twombly* and *Iqbal*. (Def.'s Mem. in Supp. of Mot. to Dismiss Third Am. Compl. [77], at 6–7.); *see Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679. Plaintiff, citing *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), urges that because the unique realities of product liability actions require less specific pleading than other causes of action, his complaint is adequate and he is entitled to proceed with discovery. (*See generally* Pl.'s Resp. to Def.'s Mot. to Dismiss Second Am. Compl. [58]; Pl.'s Resp. to Def.'s Mot. to Dismiss Third

Am. Compl. [81], 2.) The court addresses each claim separately below, considering *Bausch* in the analysis of Plaintiff's claim for breach of express warranty.

**I.     Count I: Negligence**

To state a negligence claim in a product liability action, a plaintiff "must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 353 Ill. Dec. 327, 342–43, 955 N.E.2d 1138, 1153–54 (Ill. 2011). "A manufacturer has a nondelegable duty to design a reasonably safe product," so "the key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Jablonski*, 353 Ill. Dec. at 342–343, 955 N.E.2d at 1153–54 (internal citation omitted).

In his negligence count, Plaintiff asserts that the Accura bullets "being used . . . at the time of the incident were defective, causing increased barrel pressures leading to the explosion." (Third Am. Compl. ¶ 45.) In effect, Plaintiff's assertion that the bullet was "defective" constitutes the sole allegation in his complaint that Accura breached its "nondelegable duty to design a reasonably safe product." *Jablonski*, 353 Ill. Dec. at 342–343, 955 N.E.2d at 1153–54. Plaintiff's complaint presents no factual allegations that detail *how* the bullet was defective in causing increased barrel pressures—whether because of the bullet's physical properties, its inherent design, or otherwise.[4] An assertion that the bullet was "defective," without any factual elaboration, is insufficient, as that statement is a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The court will not assume legal conclusions are true when resolving a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Absent any facts to support his

---

[4] After all, a bullet by its nature must increase barrel pressures to some degree to cause the bullet to thrust itself out of the barrel bore and into the air.

5

assertion that the bullet was defective, Plaintiff has not shown that his negligence claim against Accura is "plausible, rather than merely speculative." *Reger Dev., LLC*, 592 F.3d at 764.

In response to Defendant's earlier motions, Plaintiff assured the court he would bolster his factual allegations after obtaining an expert's report. (*See, e.g.*, Pl.'s Resp. to Def.'s Mot. to Dismiss Second Am. Compl. at 2) ("[A]ny perceived lack of factual support to Plaintiff's claims is anticipated to be cured by product testing that [the] parties are in the process of scheduling.") He has now obtained that report, and it is attached to his response to the pending motion. (Mot. to Supp. Pl.'s Resp. to Def.'s Mot. to Dismiss [92], with Ex. 1, Pl.'s Expert Report [92-1].) In considering a motion to dismiss, the court ordinarily "only consider[s] those allegations made within the four corners of the complaint," *Wilson v. Price*, 624 F.3d 389, 391, n.1 (7th Cir. 2010) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)), and Plaintiff did not reference the report in his complaint or incorporate it by reference. The court has nevertheless considered its contents in evaluating the sufficiency of the allegations.

According to Plaintiff's expert, Charles W. Powell, the Accura bullet "used in the subject rifle at the time of the explosion is defective in material design." (Pl.'s Expert Report ¶ 6.4; *see also id.* at ¶ 6.2.6 ("Defective behavior of a Powerbelt bullet increased pressure beyond those found in testing to rupture the subject rifle barrel.").) For example, Mr. Powell asserts, the bullet's outside diameter should be .001 inches smaller than a .500 inch diameter rifle bore[5] (so that the bullet slides more easily into the chamber). (*Id.*) In this case, however, Powell contends that the exploded muzzleloader's bore diameter is just .498, even though it is a .500 caliber rifle. (*Id.*) As a consequence, Mr. Powell concluded, the bullets do not slide easily into the rifle bore but "engag[e] the rifle's lands[6] even before the bullet is fired," which creates "increased barrel pressures and barrel explosions when coupled with weak barrels." (*Id.*) Mr.

---

[5] A rifle "bore" is the interior hollow space through which a bullet passes.
[6] A rifle's "lands" are spiraled metal ridges inside the barrel created by the rifling process. A rifle's lands come in contact with a bullet's surface as the bullet moves through the barrel.

Powell also explained that increased barrel pressures might occur if any piece of a rifle bullet separates from the rest of the bullet while in the chamber. (Pl.'s Expert Report ¶ 6.4.2.) As he acknowledges, however, because only bullet fragments from the fired bullet remain available for inspection, he is unable to assess whether any bullet pieces separated while in the barrel or whether the bullet engaged the rifle's lands enough to contribute to the barrel explosion. (*Id.*)

Although it need not address the matter at this time, the court notes it is uncertain that an amended complaint that incorporates Mr. Powell's findings could survive a Rule 12(b)(6) motion. For one, if Mr. Powell is correct that the rifle chamber had a diameter of just .498, the court does not comprehend how a .499 diameter bullet could fit into the rifle chamber at all. Plaintiff offers no basis for a conclusion that a bullet manufacturer is expected to design its bullets for barrels with actual diameters of .498 though labeled as having diameters of .500. (*See* Third Am. Compl. ¶ 24.) Perhaps industry custom and practice is enlightening; otherwise, it would seem that Powell's findings support the conclusion that it is the rifle—not the bullet—that is defective.

Further, Mr. Powell asserts that Accura was "unaware of the types and strengths of barrel steels or bore diameters used in various muzzleloading rifles, their pressure capabilities, or even all the barrel characteristics that affect barrel internal pressures." (Pl.'s Expert Report ¶ 6.6.) Elsewhere, he alleges that more product testing, a different bullet design, or a warning of the potential hazards created by the current bullet design when used with muzzle loading rifles would have been "appropriate." (*Id.* ¶ 6.7.) These statements, whether pleaded "on information and belief" or, as here, provided by an expert, are still too conclusory to survive a Rule 12(b)(6) motion. Plaintiff must plead *facts* that demonstrate, for instance, why Accura's alleged lack of diligence in accounting for the differences in barrel strength and size among different rifle manufacturers was itself unreasonable, which is the "key question" in a negligent design case. *Jablonski*, 353 Ill. Dec. at 342–343, 955 N.E.2d at 1153–54. Unless Plaintiff can

7

locate such facts, an amended complaint that incorporates the expert report's findings may still not state a claim for relief.

Count I (negligence) of Plaintiff's third amended complaint is dismissed as against Accura.

## II.　Count II: Strict Product Liability

To state a strict product liability claim in Illinois, a plaintiff must plead that the "injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525, 901 N.E.2d 329, 335 (Ill. 2008) (citing *Sollami v. Eaton*, 201 Ill. 2d 1, 7, 772 N.E.2d 215, 219 (Ill. 2002)). "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Mikolajczyk*, 231 Ill. 2d at 525, 901 N.E.2d at 335. "The key distinction between a negligence claim and a strict liability claim lies in the concept of fault." *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270, 864 N.E.2d 249, 263 (Ill. 2007). In a strict liability claim, "the focus is on the condition of the product," whereas a negligence claim considers the condition of the product as well as a defendant's fault. *Calles*, 224 Ill. 2d at 270, 864 N.E.2d at 263–64.

The court concludes that Plaintiff's strict product liability claim, like his negligence claim, fails under *Twombly* and *Iqbal* because the pleading does not tether any factual allegations to its abstract recitals of legal elements. (*See* Third Am. Compl. ¶¶ 54–73.) Because "the focus is on the condition of the product" in an Illinois strict product liability action, *Calles*, 224 Ill. 2d at 270, 864 N.E.2d at 263–64, Plaintiff must plead facts that show *how* the bullet was so defective in either its manufacturing or design as to make it unreasonably dangerous, or why the bullet's package warnings were inadequate to warn Plaintiff of any alleged unreasonable danger. Plaintiff's complaint offers no specifics concerning the package warnings at all. For these

reasons and those discussed in the previous section, the court dismisses Count II (strict product liability) of Plaintiff's amended complaint against Accura.

### III. Count III: Breach of Implied Warranty Standards

"To state a claim for breach of implied warranty of fitness for a particular purpose, plaintiffs must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) (applying Illinois law)). To state a general claim for breach of the implied warranty of merchantability, a plaintiff must allege that "(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Indus. Hard Chrome, Ltd.*, 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2–314). "To be merchantable, the goods must be, among other things, fit for the ordinary purpose for which the goods are used." 810 ILCS 5/2–314.

Plaintiff alleges that Accura "impliedly warranted" that its bullets "were of good and merchantable quality, fit and safe for their ordinary and intended uses without endangering human life or safety, and free from design and manufacturing defects." (Third Am. Compl. ¶ 75.) Plaintiff further asserts that Accura breached its implied warranty because its bullet was defective in some capacity. (*Id.* ¶ 76.) Plaintiff alleges he relied on such warranties when deciding to use the bullet, and that he suffered damages as a result of such reliance. (*Id.* ¶¶ 79–80, 83–84.)

The court concludes these allegations, too, are insufficient. Regardless of whether Plaintiff intends to rely on a theory of implied warranty of fitness for a particular purpose or a general implied warranty of merchantability, he has failed to present factual allegations that "raise [his] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. For example,

if Plaintiff wishes to pursue a general implied warranty of merchantability claim, he must provide facts that detail how the bullet was defective.  *See supra*, at Part I (Count I: Negligence).  If he wants to litigate an implied warranty for a particular purpose claim, he must allege what his particular purpose was in using the bullet, and why Accura had reason to know of this particular purpose.  Plaintiff pleads only legal conclusions, which the court does not accept as true when resolving a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  The court grants Accura's motion to dismiss Count III (breach of implied warranty) of Plaintiff's third amended complaint.[7]

## IV. Count IV: Breach of Express Warranty Standards

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise."  *Indus. Hard Chrome, Ltd.*, 64 F. Supp. 2d at 747.  And, because an express warranty derives from contract law, "a party must have privity to the contract before bringing a breach of express warranty claim."  *In re McDonald's*, 503 F. Supp. 2d at 957.

Plaintiff asserts that Accura "expressly warranted" that its bullets "were reasonably fit for their intended uses without endangering human safety and free from design or manufacturing defects."  (Third Am. Compl. ¶ 86.)  Plaintiff further alleges that Accura made "an affirmation of fact" relating to its bullets and "guaranteed" that the bullets "would conform to the affirmation or promise."  (*Id.* ¶ 89.)  According to Plaintiff, Accura breached this express warranty because the bullets were defective, Plaintiff relied on such express warranties, and he suffered damages as a result.  (*See id.* ¶¶ 87–93.)

The court concludes these allegations are insufficient because they offer nothing more than "a formulaic recitation" of the elements of a claim for breach of express warranty, *Twombly*,

---

[7] Accura also challenges Plaintiff's use of contrasting legal theories in pleading his implied warranty claims.  Because the court concludes that the claim does not contain sufficient factual allegations to survive a motion to dismiss under either theory, it does not consider this alternative argument.

550 U.S. at 555. Indeed, though he refers to an "express warranty," Plaintiff has not detailed any particular affirmation or promise that formed part of the basis of the bargain with Accura. True, in his response to Accura's second motion to dismiss, Plaintiff did attach photographs that he alleges depict the packaging of Accura's bullets. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss 2nd Am. Compl., at 6 (citing Ex. 2 [58-2]).) Language on the packaging asserts that Accura's bullets are "the #1 selling muzzleloader projectile in the U.S.A." and describes the bullets, among other things, as "perfect with powder or pellet," "premium," and "easy to load." (*Id.*)[8] Again, however, as with the expert report, Plaintiff has not amended his complaint to add allegations culled from the exhibit's language. And, as for the language on the packaging, the court is skeptical that it even expresses "affirmations of fact," rather than expressing mere opinions on the quality of the bullets. Opinions that a product is "premium" or "perfect" do not generally create express warranties. *See Accurate Transmissions, Inc. v. Sonnax Indus., Inc.*, No. 04-CV-7441, 2007 WL 1773195, at *5 (N.D. Ill. June 14, 2007) (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 173–74, 835 N.E.2d 801, 846 (Ill. 2005)) (discussing Illinois's "puffery" doctrine in the context of express warranties). It is Plaintiff's responsibility to develop fact-based allegations against Accura to support his express warranty claim. Plaintiff's reference to exhibits does not elevate his conclusory allegations to the level necessary to satisfy *Twombly* and *Iqbal*'s pleading requirements. The court grants Accura's motion to dismiss Count IV (breach of express warranty) of Plaintiff's third amended complaint.

Finally, Plaintiff cites *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), but that case is readily distinguishable. In *Bausch*, a plaintiff suffered injuries from an allegedly defective hip replacement device and later sued the manufacturer. *Id.* at 558–59. The district court granted the manufacturer's motion to dismiss the complaint under Rule 12(b)(6),

---

[8] The court cannot discern whether Plaintiff alleges that the photo was taken of a random Accura bullet or the specific box containing the bullet that was used when the muzzleloader's barrel exploded.

concluding the plaintiff's allegations were insufficient to plausibly establish a right to recover from the manufacturer. *Id.* at 559. The Seventh Circuit reversed, however, pointing out that in some product liability cases, plaintiffs "may not be able to determine without discovery" the nature of the defect that caused the injuries. *Id.* The court also reasoned that in certain medical device cases, much of the information needed to produce fact-based allegations in a complaint are kept confidential by the Federal Drug Administration and cannot be accessed without discovery. *Bausch*, 630 F.3d at 560.

This case differs. No federal agency restricts access to potentially inculpatory information concerning Accura's conduct or its product. And significantly, Plaintiff *has* conducted at least some discovery. Plaintiff may indeed be able to amend his complaint and generate fact-based allegations premised on such discovered materials. For now, the court dismisses all counts against Accura without prejudice.

**V.     Count V: Punitive Damages**

The court concludes that the punitive damages claim was incorrectly pleaded as a separate cause of action. The Illinois Supreme Court has explained that "a prayer for punitive damages is not, itself, a cause of action," but instead is "a type of remedy." *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495, 504, 948 N.E.2d 610, 615 (Ill. 2011). That remedy is available, under Illinois law, only if Plaintiff can show that Accura's "tortious conduct evince[d] a high degree of moral culpability" and that the conduct was "committed with fraud, actual malice, deliberate violence or oppression, or [that] the defendant act[ed] willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Slovinski v. Elliot*, 237 Ill. 2d 51, 58, 927 N.E.2d 1221, 1225 (Ill. 2010).

The court has dismissed all claims against Accura, and a request for punitive damages is a request for a form of remedy, not an independent claim. Count V of the complaint necessarily fails under Rule 12(b)(6) because it does not state a *claim* upon which relief can be granted. The court grants Accura's motion to strike Count V (punitive damages).

**CONCLUSION**

Plaintiff has failed to plead factual allegations in his complaint sufficient to satisfy federal pleading standards as set forth in *Twombly* and *Iqbal*. Defendant Accura Bullets's motion to dismiss [75] is therefore granted. Plaintiff's negligence, strict product liability, and breach of implied and express warranties claims are dismissed without prejudice. Because the court has dismissed all claims against Accura, Plaintiff's request for punitive damages necessarily fails as well. Within 21 days, Plaintiff has leave to file an amended complaint to correct any deficiencies the court has identified.

ENTER:

Dated: November 17, 2014

REBECCA R. PALLMEYER
United States District Judge