# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH CORWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 4579 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| CONNECTICUT VALLEY ARMS, ) | |
| INC., BLACKPOWDER PRODUCTS, ) | |
| INC., HODGON POWER COMPANY ) | |
| INC., ACCURA BULLETS, LLC d/b/a ) | |
| POWERBELT BULLETS, DIKAR, ) | |
| S. COOP. LTDA., REMINGTON ARMS ) | |
| COMPANY, LLC and JOHN DOE ) | |
| DEFENDANTS #1-5, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Keith Corwin, suffered permanent injuries after a rifle he attempted to fire exploded in his left hand. In this diversity case, Corwin sues several parties that he alleges manufactured different parts of the rifle and bullet or otherwise caused his injuries, asserting claims of negligence, strict liability, and breaches of express and implied warranties, and a request for punitive damages. The bullet manufacturer, Accura Bullets LLC ("Accura"), moves to dismiss plaintiff's claims against it under Rule 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

On June 24, 2011, plaintiff Keith Corwin prepared to shoot a muzzleloader gun on his property in Morris, Illinois. (Fourth Am. Compl. ¶ 22.) He alleges that he properly loaded the muzzleloader with Accura-manufactured 0.50 caliber bullets, gunpowder and a primer. (*Id.* ¶¶

23.) When he pulled the trigger, the gun barrel exploded, severely injuring plaintiff's left hand and causing the loss of his thumb. (*Id.* ¶¶ 24-27.)

Plaintiff alleges in his complaint that the muzzleloader and bullet were defective and that their defects caused the explosion. (*Id.* ¶¶ 39-41.) According to the allegations of the complaint, the muzzleloader's barrel was "inadequate to withstand the normal service load" because it was "constructed of weak steel" (*id.* ¶¶ 39-40), and Accura's bullets were "defective, causing increased barrel pressures leading to the explosion (*id.* ¶ 41). Numerous parties have already been dismissed from this lawsuit. The remaining non-nominal parties are Accura; Blackpowder Products, Inc. ("BPI"), Accura's parent company; and Dikar, S. Coop LTDA. ("Dikar"), the manufacturer of the rifle. Plaintiff asserts five causes of action: negligence, strict product liability, breach of implied warranty, breach of express warranty, and punitive damages.

Accura's present motion challenges plaintiff's Fourth Amended Complaint, which was amended after the Court granted Accura's motion to dismiss plaintiff's Third Amended Complaint on November 17, 2014. (Mem. Op. & Order [106] ("Order").) The Court explained in its Order that plaintiff's conclusory allegations that Accura's bullets were "defective," without additional facts to explain why and how the bullets were defective, were insufficient to survive Accura's motion to dismiss.[1] (*Id.* at 5-8.) The Court also explained that plaintiff did not sufficiently allege that Accura made affirmations of fact that might be considered an express warranty and that plaintiff improperly pleaded his prayer for punitive damages as a separate count, although punitive damages are a remedy, not a cause of action. (*Id.* at 9-12.)

---

[1] Plaintiff tendered an expert report in support of its allegations. Although evidence neither attached to the complaint nor incorporated by reference generally cannot be considered on a motion to dismiss, this Court nonetheless considered the contents of the expert report and found that the report tended to support the conclusion that the rifle was defective, not the bullets. (Order at 6-7.) On February 17, 2015, well after Accura's motion to dismiss was briefed, plaintiff filed a "supplemental report" by the same expert, which this Court has reviewed, but the Court bases its ruling strictly on the allegations of the complaint.

On December 8, 2014, plaintiff filed his Fourth Amended Complaint, adding the following allegations:

42. The Accura/Powerbelt bullets have a copper coating that is approximately twenty (20) times harder than the lead projectiles it covers which provides greater resistance to movement down the barrel when fired, creating increased barrel pressures.

43. There are several internal folds, laps and crack-like defects present within the hollow noses of the Accura/Powerbelt bullets. These defects are different in their character and type from bullet to bullet and are not visible to the bullet user, but only observable during microscopic examination.

44. The defects appear as cracks, or laps in the bullet structure and, in some locations, have layers of the copper plating folded into the bullet core.

45. The severe internal folds, cracks or lap defects cause the bullets to disintegrate when fired, creating an obstruction and high enough pressure, during rifle firing, to rupture the weak steel rifle barrel.

46. When Plaintiff fired the Muzzleloader, the Accura/Powerbelt bullet disintegrated due to these defects as it tried to exit the barrel, interacting with the barrel rifling and wedged in the rifle barrel, creating a bore obstruction.

47. The bore obstruction, caused by the disintegration of the defective Accura/Powerbelt bullet, caused the weak steel rifle barrel of the Muzzleloader to rupture and explode causing injury to Plaintiff.

The allegations of the Fourth Amended Complaint are otherwise identical to those of the Third Amended Complaint.

On December 22, 2014, Accura moved to dismiss the Fourth Amended Complaint, contending that the additional allegations in Paragraphs 42-47 of the Fourth Amended Complaint have not corrected the deficiencies the Court identified in the Third Amended Complaint and that plaintiff still has not alleged sufficient facts to state a plausible claim for relief against Accura. BPI and Dikar filed motions to dismiss Count V, which seeks punitive damages, contending that this count should have been eliminated because, as the Court explained in the prior Order, punitive damages are a remedy, not a cause of action.

3

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### I. COUNT I: NEGLIGENCE

To state a negligence claim in a product liability action, a plaintiff "must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153-54 (Ill. 2011). "A manufacturer has a nondelegable duty to design a reasonably safe product," so the "key question

in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Id*.

Accura contends that, even with the additional allegations, the claims in the Fourth Amended Complaint are still fundamentally conclusory, and the complaint still contains no "plausible, fact-based theory regarding how the bullet used by Keith Corwin was defective, how it unreasonably increased barrel pressures, and how Accura was required to account for manufacturer differences in barrel strength when manufacturing its product." (Mem. Supp. Accura's Mot. Dismiss Fourth Am. Compl. at 6.) Accura includes in its brief a bullet-point list of 18 questions raised by plaintiff's additional allegations as to exactly how the internal folds of the copper coating in the cracks of the hollow noses of the Accura bullets caused the bullets to disintegrate or otherwise contribute to an explosion in the barrel of the rifle. (*Id.* at 7-8.) According to Accura, that plaintiff's allegations raise all these questions as to his theory of the case tends to show that plaintiff still has not pleaded facts that raise his claim for relief above the speculative level.

The Court disagrees. Unlike in the Third Amended Complaint, which merely stated that the bullet was "defective," plaintiff has now alleged a specific defect in the bullets that Accura manufactured and plaintiff used: cracks in the bullets' hollow noses allowed layers of the copper coating to form within the bullet core, which made the bullets unstable, dangerous and liable to cause an explosion. Many of the questions Accura raises in its brief relate to how and whether plaintiff can prove that these characteristics are actually a harmful defect that Accura should or could have foreseen or prevented, but the court need not determine on a motion to dismiss whether the plaintiff will ultimately prevail. Rather, the court merely asks whether the plaintiff is entitled to offer evidence to support its allegations. *Smith v. Cash Store Mgmt.*, *Inc.*, 195 F.3d

325, 327 (7th Cir. 1999); *Gray v. Taylor*, 714 F. Supp. 2d 903, 909 (N.D. Ill. 2010). Plaintiff's allegations are sufficiently detailed to entitle him to the opportunity to prove them. The motion to dismiss is denied as to Count I.

## II.   COUNT II: STRICT PRODUCT LIABILITY

To state a product liability claim under Illinois law, a plaintiff must plead that the "injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control." *Mikolajczyk v. Ford Motor Co.,* 901 N.E.2d 329, 335 (Ill. 2008) (citing *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002)). "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Id*. In a strict liability claim, "the focus is on the condition of the product," whereas a negligence claim considers the condition of the product as well as the defendant's fault. *Calles v. Script-Tokai Corp.*, 864 N.E.2d 249, 263-64 (Ill. 2007).

Again, plaintiff makes specific factual allegations that are sufficient to state a claim that is at least plausible. Plaintiff has alleged that Accura's products had certain specific characteristics that made them dangerously defective and caused an explosion that resulted in his injury; that he has not yet proved that the bullets Accura sold to plaintiff actually had the characteristics plaintiff ascribes to them or that these characteristics amount to dangerous defects is immaterial at this stage. The motion to dismiss is denied as to Count II.

## III.   COUNT III: BREACH OF IMPLIED WARRANTY

"To state a claim for breach of implied warranty of fitness for a particular purpose, plaintiffs must allege that (1) the seller had reason to know of the particular purpose for which

the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.* 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999)). To state a general claim for breach of the implied warranty of merchantability, a plaintiff must allege that "(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Indus. Hard Chrome*, 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2-314). "To be merchantable, the goods must be, among other things, fit for the ordinary purpose for which the goods are used." 810 ILCS 5/2-314.

This court stated in its prior Order that if plaintiff "wants to litigate an implied warranty for a particular purpose claim, he must allege what his particular purpose was in using the bullet, and why Accura had reason to know of this particular purpose." (Order at 10.) Plaintiff has made no amendments to his complaint to allege any particular purpose in using the bullet or any way Accura might have known of it. To the extent he intends to make any claim of an implied warranty for a particular purpose, his claim is dismissed.

The Court previously explained that, if plaintiff wishes to litigate a general implied warranty of merchantability claim, "he must provide facts that detail how the bullet was defective." (*Id.*) As described above in Part I of this order, plaintiff has done so.[2] The motion to dismiss is denied as to the allegations of Count III that state a claim for breach of the implied warranty of merchantability.

---

[2] Accura emphasizes that Count III of the Fourth Amended Complaint is identical to Count III of the Third Amended Complaint, as if to argue that Count III must be dismissed on the same grounds that impelled the Court to dismiss the same count of the Third Amended Complaint. (Mem. Supp. Mot. Dismiss Fourth Am. Compl. at 11; Reply at 3.) However, Accura fails to account for the fact that the first paragraph of Count III states, "Plaintiff incorporates the preceding paragraphs as if fully rewritten herein." (Fourth Amended Compl. ¶ 76.) Paragraphs 42-47 may therefore be read to support Count III as well as Counts I and II.

## IV.     COUNT IV: BREACH OF EXPRESS WARRANTY

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) [the] seller guaranteed that the goods would conform to the affirmation or promise." *Indus. Hard Chrome, Ltd.*, 64 F. Supp. 2d at 747.

The Court concluded in its prior Order that plaintiff's allegations of express warranty "are insufficient because they offer nothing more than a 'formulaic recitation' of the elements of a claim for breach of express warranty," without presenting "any particular affirmation or promise that formed part of the basis of the bargain with Accura." (Order at 10 (quoting *Twombly*, 550 U.S. at 555).) Plaintiff has not amended Count IV, or any other portion of his complaint, to allege a promise or an affirmation of fact that might support a breach of express warranty claim. Count IV of the Fourth Amended Complaint suffers from the same infirmities as Count IV of the Third Amended Complaint. It is accordingly dismissed.

## V.      COUNT V: PUNITIVE DAMAGES

In Count V of the Third Amended Complaint, plaintiff re-alleged all paragraphs of the complaint by reference and sought punitive damages. The Court explained in its prior Order that this count was incorrectly pleaded because "a prayer for punitive damages is not, itself, a cause of action" but a type of remedy. (Order at 12 (citing *Vincent v. Alden-Park Strathmoor, Inc.*, 948 N.E.2d 610, 615 (Ill. 2011)). The Court accordingly struck Count V.

Nevertheless, plaintiff has included Count V unchanged in his Fourth Amended Complaint. This was apparently an oversight, for plaintiff states in his response to Accura's motion to dismiss that "the claim for punitive damages should not have been pled as a separate

cause of action . . . and Count V was properly dismissed by the Court." (Resp. Accura's Mot. Dismiss Fourth Am. Compl. at 4.)

For the same reasons this Court previously dismissed Count V of the Third Amended Complaint, Count V of the Fourth Amended Complaint is dismissed.

## VI. PARAGRAPHS CITING *BAUSCH V. STRYKER CORP.*

In each count of his complaint, plaintiff alleges that "additional discovery will result in his being able to further substantiate the allegations set forth in this complaint, and is permitted pursuant to the standard enunciated in *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), and cases cited therein." (Fourth Am. Compl. ¶¶ 53, 73, 83, 92, 99.) There were similar paragraphs in the Third Amended Complaint, but this Court stated in its prior Order that *Bausch* was distinguishable. (Order at 12.) Accura now asks this Court to strike these paragraphs, not only because *Bausch* is distinguishable, but also because this case has been pending for over a year, during which time significant discovery has been exchanged, and plaintiff should not be heard to claim that he still needs additional discovery just to state a plausible claim for relief.

Plaintiff responds that "the allegations citing to *Bausch* . . . are statements of law, generally requiring no response. The presence of references to *Bausch* are of no consequence and Defendant gains nothing by having those allegations stricken." (Resp. Accura's Mot. Dismiss Fourth Am. Compl. at 4-5.) The Court will not speculate as to why plaintiff failed to remove these paragraphs, as it has already been determined that they are out of place in this action, but nevertheless it agrees that striking them serves no purpose. As the Court previously explained, *Bausch* is distinguishable and provides no support for any contention that this is the sort of products liability case that lightens the plaintiff's pleading burden. In ruling on the present motion to dismiss, the Court has not relied on *Bausch*; it has applied the plausibility

standard of *Twombly* and *Iqbal*, as it would in any other case. No further action, such as striking portions of the complaint that mention *Bausch*, is necessary.

## **CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss [108]. Counts IV and V are dismissed with prejudice. Count III is dismissed with prejudice to the extent plaintiff alleges a breach of the implied warranty of merchantability for a particular purpose. Count III survives to the extent plaintiff alleges a breach of the implied warranty of merchantability, and Counts I and II survive, because plaintiff has made specific factual allegations of a defect in Accura's bullets. The Court grants BPI and Dikar's motions to dismiss Count V [114 & 117].

**SO ORDERED.**

ENTERED: May 13, 2015

_____
**HON. JORGE L. ALONSO**
**United States District Judge**